IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BRAD E. WILLIAMS, CAROL
KINDERKNECHT and MELINDA
DOUGHERTY,

        **Plaintiffs,**

    **v.**            **CASE NO. 15-4888-SAC-KGS**

NEX-TECH WIRELESS, LLC,

        **Defendant.**

<u>MEMORANDUM AND ORDER</u>

This is an employment discrimination action brought by three former employees of defendant Nex-Tech Wireless, LLC. These employees are Brad E. Williams, Carol Kinderknecht and Melinda Dougherty. According to the pretrial order, plaintiffs are making the following claims pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 623(a)(1)("ADEA") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"):

    Plaintiff Williams asserts that he was terminated from his job on August 21, 2014 in violation of the ADEA.

    Plaintiff Kinderknecht asserts that she was not promoted to supervisor over accounting on January 27, 2013 and to Director of Finance in October 17, 2014 in violation of the ADEA and Title VII of the Civil Rights Act of 1964. The supervisor over accounting position has also been referred to as Manager of Finance.

    Plaintiff Dougherty asserts that she was terminated on March 24, 2014 because of age

1

discrimination and retaliation in violation of the ADEA.

See Doc. No. 75, p. 10. This case is now before the court upon defendant's three motions for summary judgment against the claims of each plaintiff.

I. SUMMARY JUDGMENT STANDARDS

This court set forth the principles which govern the analysis of a summary judgment motion in Womack v. Delaware Highlands AL Services Provider, 883 F.Supp.2d 1013, 1017 (D.Kan. 2012):

> Rule 56 authorizes a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A fact is material if it would affect the outcome of a claim or defense under the governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[T]he dispute about a material fact is 'genuine,' ..., if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

> On summary judgment, the initial burden is with the movant to point out the portions of the record which show that the movant is entitled to judgment as a matter of law. Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir. 1992), cert. denied, 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992). Instead of disproving a claim or defense, the movant need only show "a lack of evidence" on an essential element. Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 671 (10th Cir. 1998). If the movant meets that burden, the non-movant must come forward with specific facts based on admissible evidence from which a rational fact finder could find in the non-movant's favor. Id. The non-movant's "burden to respond arises only if the" movant meets its initial burden of production. Neal v. Lewis, 414 F.3d 1244, 1248 (10th

2

Cir.2005) (citation omitted). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether the evidence is so one-sided that one party must prevail as a matter of law." <u>Anderson v. Liberty Lobby</u>, 477 U.S. at 251–52, 106 S.Ct. 2505. Put another way, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " <u>Matsushita Elec. Indust. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); See <u>Pinkerton v. Colorado Dept. of Transp.</u>, 563 F.3d 1052, 1058 (10th Cir. 2009).

In applying this standard, all inferences arising from the record must be drawn in favor of the nonmovant. <u>Stinnett v. Safeway, Inc.</u>, 337 F.3d 1213, 1216 (10th Cir. 2003). Credibility determinations and the weighing of the evidence are jury functions, not those of a judge. <u>Id.</u> at 1216. Nevertheless, "the nonmovant must establish, at a minimum, 'an inference of the existence of each element essential to [her] case.' " <u>Croy v. COBE Laboratories, Inc.</u>, 345 F.3d 1199, 1201 (10th Cir. 2003) (quoting <u>Hulsey v. Kmart, Inc.</u>, 43 F.3d 555, 557 (10th Cir. 1994)).

The Tenth Circuit, in <u>Lounds v. Lincare, Inc.</u>, 812 F.3d 1208, 1220–21 (10th Cir. 2015), has counseled:

[I]n the context of employment discrimination, "[i]t is not the purpose of a motion for summary judgment to force the judge to conduct a 'mini trial' to determine the defendant's true state of mind." <u>Randle v. City of Aurora</u>, 69 F.3d 441, 453 (10th Cir.1995). Many of the highly fact-sensitive determinations involved in these cases "are best left for trial and are within the province of the jury." <u>Id.</u>; see <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[T]he inquiry [at summary judgment is] whether the evidence presents a sufficient disagreement to require submission to a jury...."). Consequently, "in this Circuit ... an employment discrimination suit will always go to the jury so long as the evidence is sufficient to allow the jury to disbelieve the employer's [explanation for the alleged misconduct]." <u>Beaird v. Seagate Tech.,</u>

Inc., 145 F.3d 1159, 1177 (10th Cir.1998) (Tacha, J., concurring in part); see Randle, 69 F.3d at 452 ("[I]f ... inferential evidence is sufficient to allow a plaintiff to prevail at trial, it is surely sufficient to permit a plaintiff to avoid summary judgment so that the plaintiff can get to trial.").

## II. UNCONTROVERTED FACTS

The following facts are accepted as true solely for the purposes of the summary judgment motions now before the court. Other facts, which also are accepted as true, may be mentioned later in this order as part of the court's discussion of the legal arguments for and against summary judgment.

Defendant is a wireless service provider in central and western Kansas and part of eastern Colorado. Defendant was created in 2004.

Plaintiff Brad E. Williams was hired on November 1, 2004 as a Project Coordinator. He was one of the first employees of the company. He held various positions thereafter and received consistently good evaluations. He had the position of Network and Construction Manager at the time he was terminated on August 21, 2014. Williams was born in 1971 and was 43 years old when he was discharged.

Plaintiff Carol Kinderknecht was hired as a Bookkeeper by the parent company of defendant on December 3, 2007. She started with defendant in 2010 and worked as an accountant. She was born in 1949.

Plaintiff Melinda Dougherty was hired on October 26, 2008 as a Receptionist and later became a Network Administrative Assistant.  She was born in 1962.

Jon Lightle was hired on October 24, 2011 as Director of Finance & Operations and would later become President/CEO.  He was born in 1959.

Defendant experienced substantial financial pressure in 2012 and thereafter because significant funding sources from the federal and state government were being phased out.  Defendant was set to lose about $19 million in a 5-year period.  During a discussion regarding the financial pressures faced by defendant, the President of the Board, Larry Sevier, implied that there may be some head count reductions based on age or health.

CEO Johnie Johnson was terminated for performance reasons on December 21, 2012.  From the date of Johnson's discharge until October 2013, defendant was run by three directors who were expected to cooperate.  These directors were:  Jeff Kisner (Network Operations and Engineering); Karly Rogers (Customer Service, Sales and Marketing); and Jon Lightle (Finance).  The three directors, however, struggled to work cooperatively.

Shortly before Johnson was terminated, plaintiff Dougherty was changed from Network Administrative Assistant to Executive Assistant to Johnson and given a substantial raise.  After Johnson was discharged, plaintiff Dougherty was told to report

to Jeff Kisner.   Shortly thereafter, in January 2013, emails were exchanged indicating that plaintiff Dougherty would go back to an Administrative Assistant's position reporting to Kisner and that the position of Executive Assistant would be eliminated.

In January 2013, Daron Jamison, who was in his early thirties, was promoted to Manager of Finance by Jon Lightle who, at that time, was Director of Finance.[1]   Jamison had been hired as a Project Coordinator in August 2011.   The Manager of Finance position was not advertised prior to the promotion.   Plaintiff Williams did not think Jamison was qualified for the job.   In this post, Jamison worked above plaintiff Kinderknecht. Kinderknecht, who was in her sixties, had expressed interest in the job.   She testified that Lightle instructed her to train Jamison for the job after he was promoted.

Jon Lightle applied for and was selected by defendant's Board to serve as President/CEO in October 2013.   Lightle was 54 years old when he was made President/CEO.   Both Kisner and Rogers spoke to the Board in opposition to Lightle's selection. Each would resign under pressure or be terminated during the next 10 months.

On December 15, 2013, plaintiff Dougherty's job title and pay were returned to what they were prior to her becoming an

---

[1]   The Manager of Finance position has also been referred to as Finance/Business Development Manager.

Executive Assistant approximately one year earlier.  About this time, Dougherty and Lightle had a discussion regarding her job responsibilities in light of the change in job title.  Dougherty mentioned that she had sent an email to Camber Boland in Human Resources asking about Dougherty's job situation.  Lightle expressed frustration with Dougherty when she refused to share the email with him.  He told her maybe she ought to look for another job.  He also told Dougherty that "your people do not like change" and that it wasn't going to end well for her people.  Dougherty took "your people" to mean "older people."

Aaron Gillespie was promoted to Director of Operations on January 1, 2014.  He had held other positions since he was hired in 2006.  He was 30 years old.  Plaintiff Williams and Rogers did not think he was qualified for the position.

On occasion, Lightle spoke derogatorily concerning the age of defendant's Board members, suggesting for instance that they had trouble staying awake at meetings.

Jeff Kisner was terminated on March 10, 2014, when he was 46 years old.  He reached a severance agreement with defendant.

Plaintiff Dougherty, who had reported to Kisner, was released from employment on March 24, 2014 as her position as Network Administrative Assistant was eliminated.  Dougherty was 51 years old. Not long before Dougherty was discharged, Karly Rogers wanted to offer Dougherty a position in her department.

But, this was not permitted. Some of Dougherty's duties were taken over by Amy Miller, who had been trained by Dougherty and who was approximately 40 years old at the time Dougherty was discharged. About the time of March to May 2014, Jon Lightle stated to plaintiff Williams that plaintiff Dougherty was worthless, old and just didn't fit in.

On May 6, 2014, Nathan Sutter was promoted to Director of Network and Engineering, the position left open when Kisner was discharged. He was 33 years old. Plaintiff Williams and another older employee (Brian Brungardt, age 45) expressed interest in the position. They were told that there would be a nationwide search, but the position was filled internally. Kisner and others did not believe Sutter had the qualifications for the position.

At meetings attended by various employees, Nathan Sutter was reported to have said that things were going well now that defendant was getting "our younger management team put in place" and that Lightle "wanted everyone to know that he couldn't be happier with this new younger management team."[2]

Plaintiff Kinderknecht has stated that Lightle told her on numerous occasions that he needed to get rid of Karly Rogers and

---

[2] The first statement, which purportedly was made on May 21, 2014, was attributed to Sutter by plaintiff Williams. Doc. No. 86-1, p. 176. Kendall Stinemetz attributed the second statement to Sutter at a different gathering at an unknown date. Doc. No. 86-6, p. 8. These statements appear admissible under FED.R.EVID. 801(d)(2)(A). See Thomas v. IBM, 48 F.3d 478, 485 (10th Cir. 1995).

replace her with somebody younger that had different and better ideas.

Karly Rogers resigned her employment on or about July 30, 2014 and received a severance amount from defendant. She was 51 years old. She felt that Lightle had removed a major portion of her job duties and given them to a significantly younger employee, Aaron Gillespie.

Plaintiff Williams was terminated on August 21, 2014. He had received no written disciplinary measures prior to being discharged. Defendant asserts that Williams was fired for insubordination, performance issues, and speaking negatively about the company. Williams' job responsibilities were assumed by younger employees.

The position of Director of Finance, which had been held by Lightle before he was made President/CEO in October 2013, remained unfilled until October 5, 2014. Daron Jamison was promoted to the position at that time. He was 34 years old when he became Director of Finance, Business Development & Strategy. According to Lightle, this position required Jamison to continue "to oversee accounting/finance, regulatory, purchasing and contracts, grounds and maintenance, corporate business development and [to provide] leadership on strategy related issues." Doc. No. 86-12, p. 10. Lightle has stated that Jamison was chosen because he had "demonstrated exceptional leadership

skills both within the [company] and the community as a whole."
Id. Plaintiff Kinderknecht did not believe Jamison was qualified for the position based upon her experience in working with and training Jamison. It appears that the position was not advertised before it was given to Jamison. Plaintiff Kinderknecht was not interviewed for it.

Karly Rogers testified that Jon Lightle wanted Kinderknecht out of the company for what Rogers perceived as sexist reasons; Lightle did not like strong women. Doc. No. 86-11, pp. 46-7.

Kinderknecht had more than forty years of accounting experience. She had a bachelor's degree and one year of law school. She had experience as a comptroller and office manager for grain cooperatives. She served as an executive director for a county health care endowment association and successfully applied for substantial grants for that association. She received good evaluations and pay increases while working for defendant. She assumed the responsibilities of defendant's accounting supervisor for three months while the supervisor was on maternity leave.

Plaintiff Kinderknecht was scheduled to have a meeting to review her job evaluation on January 9, 2015. Prior to the meeting, Kinderknecht resigned her employment. She filed her administrative charge of discrimination on January 23, 2015.

III. STANDARDS GOVERNING EMPLOYMENT DISCRIMINATION AND RETALIATION CLAIMS UNDER THE ADEA AND TITLE VII.

Plaintiffs have the burden ultimately to show that the alleged adverse employment actions in violation of the ADEA would not have happened but for the alleged discriminatory or retaliatory intent. See Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176 (2009); Brainard v. City of Topeka, 597 Fed.Appx. 974, 981 (10th Cir. 2015). Plaintiff Kinderknecht has the burden of proving that sexual bias was a motivating factor in the employment actions she alleges violated Title VII. Univ. of Texas Southwestern Medical Center v. Nassar, 133 S.Ct. 2517, 2522-23 (2013).

There are two ways of presenting proof to support a discrimination or retaliation claim, with direct evidence or circumstantial evidence. See Ward v. Jewell, 772 F.3d 1199, 1202 (10th Cir. 2014). Direct evidence is evidence which if believed proves the existence of a fact in issue without inference or presumption. Shorter v. ICG Holdings, Inc., 188 F.3d 1204, 1207 (10th Cir. 1999)(interior quotations omitted) overruled in part on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003). Plaintiffs have not presented direct evidence of discrimination or retaliation in their responses to the summary judgment motions. Cf., Merritt v. Tellabs Operations, Inc., 222 Fed.Appx. 679, 681 (10th Cir.

2007)(statement by CEO that reducing average age of management is a good thing is not direct evidence of discrimination); Shorter, 188 F.3d at 1207-08 (racial slur used by officer who fired employee one or two days after termination is not direct evidence of discrimination); Heim v. State of Utah, 8 F.3d 1541, 1546 (10th Cir. 1993)(manager's remark that he hated having women in the office was not direct evidence of discriminatory intent); Furr v. AT&T Technologies, Inc., 824 F.2d 1537, 1549 (10th Cir. 1987)(a manager's statement that plaintiff could not be promoted because he was too damned old was not direct evidence of discriminatory intent).

Circumstantial evidence is analyzed under the McDonnell Douglas burden shifting test. Ward, 772 F.3d at 1202. Under this test a plaintiff has the burden of proving a prima facie case of discrimination or retaliation by preponderance of the evidence. Id.; Adamson v. Multi Community Diversified Services, Inc., 514 F.3d 1136, 1145 (10th Cir. 2008)(McDonnell Douglas test requires plaintiff to prove prima facie case of discrimination). The prima facie burden is not "an onerous one." Orr v. City of Albuquerque, 417 F.3d 1144, 1149 (10th Cir. 2005). "[T]he purpose of a prima facie case is 'the establishment of an initial inference of unlawful discrimination warranting a presumption of liability in plaintiff's favor.'" Lewis v. Twenty-First Century Bean Processing, 2015 WL 4774052 *3 (D.Kan.

8/13/2015)(quoting <u>Velasquez v. Philips Elecs. N.Am. Corp.</u>, 2015 WL 505628 *7 (D.Kan. 2/6/2015)).

If a plaintiff establishes a prima facie case, then the burden shifts to the defendant "to articulate a legitimate, non-discriminatory reason for the adverse employment action." <u>Jaramillo v. Colorado Judicial Dept.</u>, 427 F.3d 1303, 1307 (10th Cir. 2005). If the defendant meets this standard, the burden shifts back to the plaintiff to show by a preponderance of the evidence that the employer's reasons are a pretext for unlawful discrimination or retaliation. See <u>id.</u> (applying burden shifting approach to Title VII sex discrimination action); <u>Hinds v. Sprint/United Management Co.</u>, 523 F.3d 1187, 1195 (10th Cir. 2008)(applying burden shifting analysis to ADEA claim); <u>Nealy v. Water District No. 1</u>, 324 Fed.Appx. 744, 748 (10th Cir. 2009)(applying burden-shifting framework to ADEA and retaliation claims).

The Tenth Circuit has stated that pretext may be demonstrated "by producing evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." <u>Jaramillo</u>, 427 F.3d at 1308 (interior quotations omitted). Such

13

evidence may include "prior treatment of plaintiff; the employer's policy and practice regarding minority employment (including statistical data); disturbing procedural irregularities (e.g., falsifying or manipulating ... criteria); and the use of subjective criteria." Id. (interior quotations omitted); see also, Greene v. Safeway Stores, Inc., 98 F.3d 554, 560-61 (10th Cir. 1996)(evidence offered to show a pattern of removals based on age is admissible to show age discrimination at trial). Remarks or actions which reflect bias may also be considered evidence of pretext. See Johnson v. Weld County, Colo., 594 F.3d 1202, 1202-13 (10th Cir. 2010); see also Greene, 98 F.3d at 561. "'Evidence supporting the prima facie case is often helpful in the pretext stage and nothing about the McDonnell Douglas formula requires us to ration the evidence between one stage or the other.'" Wells v. Colorado Dept. of Transp., 325 F.3d 1205, 1218 (10th Cir. 2003)(quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 286 (3rd Cir. 2000)).

IV. THE COURT SHALL DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF WILLIAMS.

As already noted, plaintiff Williams alleges that he was terminated in violation of the ADEA. Defendant contends that plaintiff Williams cannot demonstrate a prima facie case of age discrimination and that plaintiff Williams cannot demonstrate

that defendant's alleged reasons for terminating Williams are a pretext for age discrimination.

A. Plaintiff Williams has demonstrated a prima facie case of age discrimination.

To show a prima facie case of age discrimination in the termination of an employee, a plaintiff must show that he or she: 1) is a member of the protected class; 2) suffered an adverse employment action; 3) was qualified for the position at issue; and 4) was treated less favorably than others not in the protected class. Jones v. Oklahoma City Public Schools, 617 F.3d 1273, 1279 (10th Cir. 2010). This court has observed that the fourth element of a prima facie case has been articulated in different ways by the Tenth Circuit. Lewis, supra. In its "broadest formulation," the fourth element has been stated as requiring that the adverse employment action "occur under circumstances giving rise to an inference of discrimination." Id. at *3-4.

Plaintiff Williams has demonstrated a prima facie case of age discrimination relating to his job termination. The only element in question is the last element which is whether plaintiff Williams was treated less favorably than others not in his class or whether he was terminated under circumstances which give rise to an inference of age discrimination. Plaintiff Williams was terminated and had his responsibilities assumed,

according to his deposition testimony, by persons who were younger, although not substantially younger. Doc. No. 86-1, pp. 271-73. In addition, there is other evidence which will be discussed in relation to the pretext issue that gives rise to an inference of age discrimination. Therefore, the court rejects defendant's contention that plaintiff Williams has not stated a prima facie case of age discrimination.

B. <u>Plaintiff Williams has presented evidence which creates a material fact issue as to whether defendant's nondiscriminatory reasons for his termination are a pretext for age discrimination</u>.

It is undisputed that defendant has presented evidence of a non-discriminatory explanation for plaintiff's termination. Defendant asserts that plaintiff Williams was terminated for insubordination, for speaking to front line employees in a negative manner regarding the direction of the company, and for performance issues.

Plaintiff Williams has presented evidence that he received positive job evaluations throughout his career with defendant and that he did not receive any written disciplinary action while working for defendant. Williams also alleges that he was not told a reason for termination. There is evidence that in March 2014 and July 2014, proximate in time to Williams' termination in August 2014, two persons who were in their forties or fifties were forced out from Director positions and

replaced by employees in their thirties. Two other employees in their thirties were promoted to Director positions in 2014, one in January 2014 and one in October 2014. There is evidence disputing the qualifications of the younger persons for the Director positions. There is also evidence that older employees who sought consideration for some of these positions were not considered for the jobs.

Additionally, there is evidence that the President/CEO Jon Lightle made remarks suggesting a bias against older employees and older members of the Board of Directors. There is evidence that other members of management made comments suggesting that there was a desire for younger employees or management in the company. And there is evidence that the Chairman of the Board of defendant made a comment suggesting that older employees might be targeted for discharge.

Defendant contends that some of the comments were not made by relevant decisionmakers and that the comments were stale and stray remarks which do not suffice to show pretext. In evaluating these arguments, the court should examine whether the comments were directed at plaintiff Williams or at his position, whether the comments were made by decisionmakers involved in the adverse employment action, when the comments were made, and whether the comments were pertinent to a policy of defendant. See Rea v. Martin Marietta Corp., 29 F.3d 1450, 1457 (10th Cir.

1994). The comments in this instance were made by the Chairman of the Board, the President/CEO, and Nathan Sutter, who was plaintiff Williams' supervisor when he was terminated. The remarks appear to have been made within months or a year of Williams' termination, and some of the remarks appear to suggest a policy or goal of replacing older employees with younger employees. Reviewing the evidence in a light most favorable to Williams, the court believes the alleged biased remarks in combination with the evidence of resignations, terminations and promotions, and the evidence of Williams' job performance, are sufficient to create a material fact issue as to whether the reasons given for Williams' termination were a pretext for age discrimination.

In conclusion, the court rejects defendant's argument for summary judgment against plaintiff Williams.

IV. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF KINDERKNECHT'S CLAIMS SHALL BE GRANTED IN PART AND DENIED IN PART.

A. Summary judgment must be granted against plaintiff Kinderknecht's claim that she was not promoted to supervisor over accounting or manager of finance on January 27, 2013.

A plaintiff may not bring a Title VII action or an ADEA claim in federal court upon an issue about which plaintiff has not filed a timely administrative charge. Daniels v. United Parcel Service, Inc., 701 F.3d 620, 628 (10th Cir. 2012)(citing National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109

18

(2002)).  In Kansas, employees must bring an administrative charge within 300 days of a discrete act of discrimination.  <u>Id.</u> Plaintiff Kinderknecht did not bring an administrative charge within 300 days of defendant's failure to promote plaintiff to the position of supervisor over accounting or manager of finance on January 27, 2013.  She contends that the continuing violation doctrine permits her to proceed with her claim regarding that position.  But, as recognized in <u>Daniels</u>, 701 F.3d at 632 and <u>Martinez v. Potter</u>, 347 F.3d 1208, 1210-11 (10th Cir. 2003), the Supreme Court in <u>Morgan</u>, 536 U.S. at 113-14 has held that the continuing violation theory does not apply to discrete actions like a failure to promote.

B.  <u>Summary judgment will be denied as to plaintiff Kinderknecht's claims regarding the promotion to Director of Finance, Business Development & Strategy</u>.[3]

1.  <u>Plaintiff Kinderknecht has shown a prima facie case of age discrimination</u>.

To show a prima facie case of a discriminatory promotion practice, a plaintiff must establish that he or she:  1) is a member of a protected class; 2) applied for and was qualified for the particular position; 3) was not promoted despite the qualifications; and 4) the position was filled or remained open after he or she was rejected.  <u>Jaramillo</u>, 427 F.3d at 1306-07.

_____

[3] This position, that was filled by Daron Jamison on October 17, 2014, is sometimes referred to by the parties as Director of Finance.  The court shall also refer to it as Director of Finance for short.  But, the court is cognizant that the full title implies greater responsibilities.

Mindful that a prima facie case is not an onerous burden, the court finds that plaintiff Kinderknecht has satisfied the standard with regard to the promotion claim for the Director of Finance position. Defendant makes a general claim that plaintiff has not established a prima facie case. There appears to be proof in the record, however, which satisfies the two elements which are contested here. First, plaintiff has presented evidence (see resume at Doc. No. 98-1, Ex. A) which, viewed in a light most favorable to plaintiff on this record, shows that she has the experience and qualifications sufficient to qualify for the position of Director of Finance. See Kilcrease v. Domenico Transportation Co., 828 F.3d 1214, 1220 (10th Cir. 2016)(at prima facie stage a plaintiff need only show some evidence that she possesses the objective qualifications for the job). "A failure to satisfy either subjective criteria, or objective qualifications 'that have no bearing on an applicant's ability to perform the job sought,' cannot be used to defeat a plaintiff's prima facie case." Id. at 1220-21 (quoting EEOC v. Horizon/CMS Healthcare Corp., 220 F.3d 1184, 1194 (10th Cir. 2000)). Second, plaintiff Kinderknecht is among the group of people who might reasonably be interested in the position of Director of Finance. This satisfies the element of a job application since the position was filled internally and apparently without the requirement of a formal application. See

Bennett v. Quark, Inc., 258 F.3d 1220, 1228 (10th Cir. 2001) overruled on other grounds, Boyer v. Cordant Technologies, Inc., 316 F.3d 1137, 1140 (10th Cir. 2003).

      2. Plaintiff Kinderknecht has presented evidence which creates a genuine issue of material fact as to whether defendant's reasons for not promoting Kinderknecht are a pretext for discrimination.

Defendant has satisfied its burden of articulating a reason for not promoting plaintiff Kinderknecht. Defendant has produced evidence that Jamison was promoted to Director of Finance over plaintiff Kinderknecht because he was considered more qualified for the position. This shifts the burden back to plaintiff to proffer evidence demonstrating that defendant's reasons are pretextual. MacKenzie v. City and Cnty. of Denver, 414 F.3d 1266, 1278 (10th Cir. 2005). If qualifications were the only evidence to weigh, the court would not deny summary judgment. The court is cognizant that it may not act as a "super personnel department that second guesses employers' business judgments," that "minor differences" between job applicants' qualifications are not sufficient to show pretext, and instead "the disparity in qualifications must be 'overwhelming.'" Vigil v. City of Albuquerque, 210 Fed.Appx. 758, 764 (10th Cir. 2006)(quoting Jaramillo, 427 F.3d at 1308). The court is also aware of Jamison's education and business

background as discussed in his deposition. See Doc. No. 89, ¶ 16 (citing Doc. No. 86-7).

The court finds that there is a genuine issue of material fact as to whether Jamison's qualifications were a pretext for age discrimination for the following reasons. First, the decisionmaker on the promotion emphasized what appears to be a subjective criterion ("leadership skills") in explaining his reason for promoting Jamison. Doc. No. 86-12, ¶ 30. As already mentioned, this is a factor which may be considered in showing pretext. Second, the evidence of the defendant's pattern of employment decisions and negative remarks regarding older employees is evidence of pretext. Some of the previously described remarks were not directed at plaintiff Kinderknecht, but they were directed at older employees by a decisionmaker. Also, Karly Rogers testified that Lightle wanted Kinderknecht out of the company, even though she received good evaluations as an employee. Finally, there is evidence that Kinderknecht was made responsible for training Jamison for the position of Manager of Finance after Jamison was placed in that position, in spite of plaintiff's alleged interest in the position. There is also evidence that plaintiff Williams did not consider Jamison qualified for Manager of Finance. This evidence of plaintiff's prior treatment may also be considered proof of pretext.

The court finds that plaintiff proven enough on this record for a reasonable person to question whether age motivated the promotion decision.

    3.  <u>Plaintiff Kinderknecht has presented evidence sufficient to create a genuine issue for trial regarding sex discrimination</u>.

Plaintiff Kinderknecht also asserts that bias against women was a motive for promoting Jamison over Kinderknecht for the Director of Finance position. The court shall not repeat the elements of a prima facie case and merely state that plaintiff has satisfied those elements. The court is mindful that ultimately plaintiff must show that gender bias was a motivating factor, and not that it was the but-for cause of the promotion decision.

As noted already, defendant has articulated a nondiscriminatory reason for the promotion decision. The issue becomes whether plaintiff has made a sufficient showing that defendant's nondiscriminatory reasons for promoting Jamison to Director of Finance were a pretext for sex discrimination. To support this inference, plaintiff Kinderknecht states that she bases her claims "at least in part on the fact that Mr. Jamison replaced Renee Medina, Heather Offut was replaced by two males, Marcie Berens lost her job and Karly Rogers was replaced by Eian Wagner." Doc. No. 97-1, p. 46. But, there is no evidence of why Heather Offut and Marcie Berens left their jobs and whether

the males who replaced Offut were less qualified than Offut or other females interested in the position. There is also no evidence that a male replaced Berens. In addition, the record lacks evidence regarding Wagner's qualifications and whether he was chosen to replace Rogers over an equally or better qualified female. Also, there is no evidence presented of sexist remarks. But, there is evidence that the only female director in the company resigned under pressure because her duties were being given to a male. There is also evidence, reading the record in a light most favorable to plaintiff, that Jamison was promoted to the Manager of Finance position when plaintiff Kinderknecht was better qualified. Finally, there is evidence that Lightle did not value strong women and wanted Kinderknecht out of the company.

Again, considering the subjective nature of Jamison's perceived advantage in "leadership skills" and the other evidence supporting a claim of pretext, the court finds that plaintiff has shown sufficient proof on this record for a reasonable person to decide that the reasons advanced for the promotion decision are a pretext for sex discrimination.

V. THE COURT SHALL DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF DOUGHERTY'S CLAIMS.

Plaintiff Dougherty contends that her job was eliminated and she was discharged because of her age and in retaliation

against Dougherty for conduct protected under the ADEA. The court rejects defendant's summary judgment motion against both these claims.

A. The court rejects summary judgment against plaintiff Dougherty's age discrimination claim.

Defendant disputes that plaintiff Dougherty has satisfied the elements of a prima facie case on the grounds that Dougherty was not terminated. Instead, her job was eliminated. The court disagrees with defendant's contention. The purpose of the prima facie case is to provide a framework for determining whether one may make an inference of discrimination. Here, plaintiff Dougherty was within the protected age group. She was doing satisfactory work. But, her job was eliminated and her work was taken on by a substantially younger employee who plaintiff Dougherty had helped train. This, together with the other evidence of age bias described in this memorandum is sufficient to raise an inference of age discrimination. Even if this matter were treated as a reduction-in-force case, the court believes the elements of a prima facie case are satisfied. See Pippin v. Burlington Resources Oil and Gas Co., 440 F.3d 1186, 1192-93 (10th Cir. 2006)(reciting elements of a prima facie case in a RIF/age discrimination dispute which include requirement of "some evidence" the employer intended to discriminate).

Defendant has asserted financial reasons as grounds for plaintiff Dougherty's termination. This is supported with evidence that the company was seeking ways to cut expenses and that Dougherty's position was unneeded. Doc. No. 86-12, p. 9. Thus, the burden is shifted back to plaintiff Dougherty to articulate evidence showing a genuine issue of material fact as to pretext. Once again, the evidence described earlier in this opinion – which includes evidence of biased remarks by President/CEO Lightle directed at plaintiff Dougherty, a pattern of alleged discriminatory personnel decisions, and the rejection of an opening for Dougherty in a different section of the company – is sufficient to raise a question of fact on this record as to pretext.

B. The court rejects summary judgment against plaintiff Dougherty's retaliation claim.

To show a prima facie case of retaliation, plaintiff Dougherty must show that she: 1) engaged in protected opposition to discrimination; 2) suffered an adverse employment action; and 3) a causal connection existed between the protected activity and the adverse employment action. MacKenzie, 414 F.3d at 1278-79. The anti-retaliation provisions of the ADEA prohibit an employer from discriminating against an employee because the employee "has opposed any practice made unlawful" by the statute, or because she "has made a charge, testified,

assisted, or participated in any manner in an investigation, proceeding, or litigation" under the statute. 29 U.S.C. § 623(d). Protected opposition may range from formal charges to informal complaints to superiors. <u>Hertz v. Luzenac America, Inc.</u>, 370 F.3d 1014, 1015 (10th Cir. 2004). "Although no magic words are required, to qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by the ADEA." <u>Hinds</u>, 523 F.3d at 1203. A plaintiff need only show that when she engaged in protected opposition, she had a reasonable good-faith belief that the opposed behavior was discriminatory. <u>Hertz</u>, 370 F.3d at 1016.

Defendant asserts that plaintiff Dougherty cannot establish a prima facie case of retaliation because she did not engage in protected activity, that is, oppose a practice made unlawful by the ADEA or make a legitimate complaint under the law. Plaintiff Dougherty has testified in her deposition that she had a heated discussion with Jon Lightle which involved, in part, an email from Dougherty to Human Resources which she refused to share with Lightle. Plaintiff Dougherty alleges that Lightle told her that her people don't like change and that it would not end well for people who don't like change. Dougherty thought this referred to "older people," although that term was not used. Doc. No. 86-3, p. 94. According to plaintiff Dougherty,

Lightle also told her that she might consider looking for another job. Id. at 93. Dougherty testified that after this exchange she left another message with Camber Boland of Human Resources and that Boland then called Jon Lightle. Id. at 96.

Plaintiff could reasonably construe the comment regarding resistance to change to be a discriminatory comment. Courts have recognized that resistance to change is an age-related stereotype which the ADEA was created to combat. See Hazen Paper Co. v. Biggins, 507 U.S. 604, 610-11 (1993); O'Reilly v. Marina Dodge, Inc., 435 Fed.Appx. 8, 12 (2nd Cir. 2011); Hartsel v. Keys, 87 F.3d 795, 802 (6th Cir. 1996) cert. denied, 519 U.S. 1055 (1997); Bienkowski v. American Airlines, Inc., 851 F.2d 1503, 1507 n.4 (5th Cir. 1988); Conn v. American National Red Cross, 149 F.Supp.3d 136, 147 (D.D.C. 2016); Peterson v. Mid-State Group, Inc., 54 F.Supp.3d 1039, 1044 (E.D.Wis. 2014).

This court has noted that: "a plaintiff's opposition to a supervisor's discriminatory comment 'has been considered sufficient to constitute the opposition to a discriminatory employment practice required to establish the initial prong of a retaliation claim.' Loggins v. Cleveland County, 2005 WL 2318606 at *6 (W.D.Okla.2005) (citing Alexander v. Gerhardt Enterprises, Inc., 40 F.3d 187, 195 (7th Cir.1994); Rowland v. Franklin Career Services, LLC, 272 F.Supp.2d 1188, 1207 (D.Kan.2003)); see Domai v. Discover Financial Services, Inc., 244 Fed.Appx.

169, 174 (10th Cir.2007). ("[A] credible complaint about a supervisor's racial animus could constitute protected opposition to discrimination....")." _Womack_, 883 F.Supp.2d at 1023. Plaintiff's alleged report to Camber Boland, the Human Resources Manager, regarding CEO Lightle's alleged comments purportedly reflecting age animus provides sufficient grounds to find a material issue of fact as to whether plaintiff engaged in protected activity which was conveyed to her employer.[4]

Defendant also contends that there is no evidence to support a causal connection between Dougherty's discharge and a retaliatory motive. For the purposes of establishing a prima facie case, it is sufficient for there to be a temporal proximity between plaintiff Dougherty's discharge and her protected opposition to discrimination. Here approximately three months separated Dougherty's opposition activity and her termination. This is not considered sufficiently close in time. See _Conroy v. Vilsack_, 707 F.3d 1163, 1181 (10th Cir. 2013)("if the adverse action occurs three months out, the action's timing alone will not be sufficient to establish the causation element"). There is, however, other evidence to support a causal connection. First, plaintiff Dougherty testified that

---

[4] Defendant refers to _Robinson v. Cavalry Portfolio Services, LLC_, 365 Fed.Appx. 104 (10th Cir. 2010) where the court found that a complaint regarding a co-worker's racial slur did not constitute opposition protected by Title VII. The _Robinson_ case is distinguishable from this case because it involves the remarks of a co-worker as opposed to a supervisor.

Lightle suggested that she look for another job when she refused to share an email she sent to Human Resources. Second, plaintiff Williams testified that his experience was that it "backfired" on people who went to Human Resources and Karly Rogers testified that she was advised by someone in Human Resources not to bring up her concerns about discrimination. Doc. No. 86-1, p. 98; Doc. No. 86-11, p. 140-41.

Defendant, as already noted, has articulated a non-retaliatory motivation for plaintiff Dougherty's termination of employment. The court believes that the evidence described in the previous paragraph is sufficient to create a genuine issue of material fact as to whether the alleged business reasons for plaintiff Dougherty's termination are a pretext for illegal retaliation.

VI. CONCLUSION

For the above-stated reasons, the court shall deny defendant's motions for summary judgment (Doc. Nos. 82 and 85) against the claims of plaintiffs Melinda Dougherty and Brad Williams. Defendant's motion for summary judgment (Doc. No. 84) against the claims of plaintiff Carol Kinderknecht is granted in part and denied in part.

**IT IS SO ORDERED.**

Dated this 13th day of April, 2017, at Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge